**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| v. | ) | Criminal No.: 2:04-618-PMD |
| | ) | |
| Armond Rashawn Wright, | ) | |
| | ) | **Order** |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court upon Defendant Armond Rashawn Wright's ("Defendant") Motion to Suppress drugs found on his person and a gun found in a car he was a passenger in. A hearing was held before the court on December 8, 2008 at 2:00 p.m.

**BACKGROUND**

Around midnight on December 10, 2003, Officer Blair Cribb ("Officer Cribb") of the Georgetown Police Department witnessed a 1988 hatch-back style Honda make a right-hand turn without using a turn signal. Officer Crib initiated a stop based on this traffic violation. As Officer Cribb approached the car, he could not view its interior because the rear window and the smaller side-windows of the back seat were heavily tinted. Therefore, he stopped at the trunk of the car and asked the driver, Donna Price ("Ms. Price), to step out with her driver's license and registration. As she exited the vehicle, another patrol officer, Sergeant Scott Scriggins, arrived at the scene of the traffic stop to assist Officer Cribb. Officer Scriggins walked to the passenger side of the vehicle to identify any other passengers. After noticing Defendant Officer Scriggins informed Officer Cribb that the passenger in the vehicle was a "known drug dealer."

At this point, Officer Scriggins remained with Ms. Price behind the car, and Officer Cribb approached the passenger's side of the vehicle. He asked Defendant to step out of the car. When Defendant exited the vehicle, Officer Cribb noticed both his front pockets were bulging.

Because of this, Officer Cribb informed Defendant that he would conduct a pat-down of his person to search for weapons. While patting-down the first pocket, Officer Cribb did not feel anything that could be a weapon, but he did feel a bag of what he immediately thought to be marijuana. He did not seize the drugs at this point, but continued to pat down the rest of Defendant's person for weapons. While patting-down the other pocket, Officer Cribb felt something hard and asked Defendant what was in this pocket. Defendant responded he carried a cell phone and pager. Officer Cribb testified that he then asked Defendant if he could search the pocket, to which Officer Cribb also testified that Defendant consented. Defendant contests that consent was ever granted to search his person.

On this discovery, Officer Cribb testified that Defendant withdrew his consent to continue the search of his person. Despite this request, Officer Cribb placed Defendant under arrest and continued to search. The full search also uncovered an empty gun holster inside Defendant's waistband. According to the Government's account, Defendant informed Officer Cribb that he could find a gun under the passenger's seat of the car that belonged to him. Officer Cribb's search of the car did uncover a black Bryco Arms 9mm semi-automatic pistol under the passenger's seat, which was loaded with eleven rounds of ammunition, and some half-smoked marijuana cigarettes under the driver's seat. In all, Officer Cribb found 67.9 grams of marijuana during the stop. The Government charged Defendant in a three-count indictment. The three counts include: (1) possession of a firearm by a convicted felon; (2) possession with intent to distribute marijuana; and (3) possessing a firearm in furtherance of a drug trafficking crime.

## ANALYSIS

The first dispute in this matter arises over whether or not Officer Cribb had probable cause to conduct the traffic stop. Where probable cause exists to believe that a traffic violation has occurred, the decision to stop a vehicle is reasonable per se. *Whren v. United States*, 517 U.S. 806, 810 (1996). Section 56-5-2150 of the South Carolina Code states that "[n]o person shall turn a vehicle . . . upon a roadway . . . without giving an appropriate signal." The Code further provides that an appropriate turn signal "shall be given either by means of the hand and arm or by signal lamps." S.C. Code Ann. § 56-5-2180. Officer Cribb testified that he witnessed Ms. Price make a right-hand turn without using a signal lamp; therefore, the court finds he had probable cause to stop her vehicle for committing a traffic violation. Once a vehicle has been lawfully detained for a traffic violation, it is reasonable for police officers to order the driver out of the vehicle for safety purposes. *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12 (1977). Additionally, an officer may also order passengers out of a car that is subject to a valid traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Thus, Officer Cribb did not exceed his authority by asking Defendant out of the vehicle, especially given the facts that the stop occurred in the middle of the night and the car's windows were heavily tinted.

Defendant's primary contention is that he never consented to the search of his person. Even if the court found that Officer Cribb lacked Defendant's consent, the court still finds the search of the Defendant and the car, as well as the seizure of the gun and marijuana, lawful. An officer may conduct a pat-down search without a warrant if, under the totality of the circumstances, the officer has an articulable, reasonable suspicion that a person is involved in criminal activity and that he is armed. *Terry v. Ohio*, 392 U.S. 1 (1968). The Fourth Circuit has advanced this principle by holding that "in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the

officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer's safety and the safety of others." *United States v. Sakyi*, 160 F.3d 164, 169 (1998) (upholding the constitutionality of a pat-down search of a passenger of a car based merely on the presence of a Philly Blunt box in the car's glove compartment and the traffic stop occurring in a high-crime area, even though the officer testified he did not see any bulges in the passenger's clothing). The traffic stop in question occurred in the middle of the night, and the car's heavily tinted windows prevented Officer Cribb from seeing the entire interior of the car. Furthermore, Officer Scriggins, who worked in the narcotics division, made Officer Cribb aware of Defendant's reputation of being involved with drugs, and the Fourth Circuit has stated that "an officer can couple knowledge of prior criminal involvement with more concrete factors in reaching a reasonable suspicion of current criminal activity." *United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997); *see also Sakyi*, 160 F.3d at 169 (noting that guns often accompany drugs). Based on the totality of these circumstances surrounding the stop, including his observation of Defendant's bulging pockets, the court finds that Officer Cribb had reasonable suspicion to conduct a pat-down search of Defendant to determine whether Defendant was armed or dangerous.

If a pat-down search provides an officer with probable cause for believing that an object felt in the clothing is contraband or other criminal evidence subject to seizure, he or she may pull out the object without a warrant, pursuant to the "plain feel" doctrine. *Minnesota v. Dickerson*, 508 U.S. 366 (1993). The plain feel doctrine holds that contraband discovered during a lawful *Terry* stop is admissible so long as the search does not exceed the bounds permitted by *Terry*. *Minnesota v. Dickerson*, 508 U.S. 366, 370 (1993). Thus, if the contour or mass of the object makes its identity immediately apparent, the officer may lawfully seize it. *Id.* at 375. Once an

officer has determined that the object is not a weapon, however, and if its shape or size does not indicate its contraband nature, the search must stop. *See id.* at 378. The question becomes whether or not the incriminating nature of the digital scale and bags of marijuana was immediately apparent. *See United States v. Raymond*, 152 F.3d 309, 313 (4th Cir. 1998) (upholding the seizure of crack cocaine from defendant when the officer testified that he realized the hard object in the defendant's pocket was not a gun, but immediately concluded it was crack cocaine, and when the search took approximately five seconds). Officer Cribb testified that, based on his training and experience, he immediately recognized a bag of marijuana in the first pocket that he patted down. He further testified that he did not immediately seize the drugs because he wanted to continue patting-down the Defendant to ensure he carried no weapons. In Defendant's other pocket, he felt a hard object that he thought may have been a knife and another bag of what he also thought was marijuana. Officer Cribb testified that he asked Defendant if he could search that pocket and that Defendant consented; however, Defendant contests this assertion. Even if Defendant did not consent to the search of his pocket, Officer Cribb testified that he immediately recognized the contents of both pockets to be bags of marijuana and thought the hard object may have been a knife, which gave him the authority to seize them. Nothing indicates that Officer Cribb manipulated the contents of Defendant's pockets, but instead, he immediately recognized contraband on the Defendant's person. Based on the previously cited law, the court finds that Officer Cribb did not violate Defendant's Fourth Amendment right in seizing the bags of marijuana and the digital scale from Defendant's pockets.

Once Officer Cribb found the marijuana and the digital scale in Defendant's pocket, he placed Defendant under arrest. An officer who makes a lawful custodial arrest may conduct a contemporaneous warrantless search of the arrestee's person and the area within the arrestee's

immediate control. *Chimel v. California*, 395 U.S. 752, 763 (1969). Such a search allows an officer to remove any weapons that the arrestee can reach and prevent the concealment or destruction of evidence. *New York v. Belton*, 453 U.S. 454, 457 (1981) (citing *Chimel*, 395 U.S. at 763). Therefore, Officer Cribb had the authority to continue to search the rest of Defendant's person and the car, regardless of whether Defendant or Ms. Price consented to either search. These searches uncovered an empty gun holster in Defendant's waistband, a black Bryco Arms 9mm semi-automatic pistol under the passenger's seat, which was loaded with eleven rounds of ammunition, and some half-smoked marijuana cigarettes under the driver's seat. Thus, Officer Cribb lawfully seized these items as well.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Armond Rashawn Wright's Motion to Suppress is **DENIED**.

**AND IT IS SO ORDERED**.

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**December 11, 2008**