IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff | ) | 2:04-CR-618 |
| VS | ) | Charleston, South Carolina |
| ARMOND WRIGHT, Defendant | ) | September 21, 2010 |

TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE P. MICHAEL DUFFY,
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: MR. SEAN KITTRELL
Assistant United States Attorney
P.O. Box 978
Charleston, SC 29402

For the Defendant: MR. DALE COBB
Belk Cobb Infinger
and Goldstein
P.O. Box 71121
Charleston, SC 29415

Court Reporter: Amy C. Diaz, RPR, CRR
P.O. Box 835
Charleston, SC 29402

Proceedings recorded by mechanical shorthand, Transcript produced by computer-aided transcription.

THE COURT: If y'all are ready, call the case.

MR. KITTRELL: This is *United States of America vs. Armond Wright*, Criminal Number 2:04-618. The defendant is present represented by Mr. Dale Cobb, who is also present. We're here for purposes of sentencing, having pled guilty on the 3rd of June, 2009 pursuant to a plea agreement.

And I would note for the Court's edification that paragraph 9 of that same plea agreement provides for a recommended sentence of 10 years with the two counts consecutive each to the other, as to each one. It's therefore an uncontested sentencing and there are no objections to the Presentence Report.

THE COURT: Thank you very much.

Mr. Cobb, would you and your client stand at the podium, please?

Mr. Kittrell has appropriately put in the record what the agreements have been. And for the record, I need to go through what the Guidelines provide.

The total offense level is 21.

Criminal History Category is VI.

The defendant is not eligible for probation.

There is a term of imprisonment from 77 to 96 months, plus a consecutive 60-month term of imprisonment as to Count 3.

However, as the defendant is a Career Offender

pursuant to the Guidelines under Section 4B1.1(c)(2)(B), the Guideline range becomes 262 to 327 months.

Provisions of Guidelines 5G1.2(e) apply. The total punishment is to be apportioned among the counts of conviction with the 924(c) count imposed consecutively to any other count of conviction.

There is a four to five-year supervised release.

A fine has not been calculated due to the defendant's inability to pay a fine.

Restitution is not an issue in the case.

There is a $300 special assessment fee.

Is everyone in agreement those would be the Guidelines after the Plea Agreement and the Court's concurrence in that?

MR. KITTRELL: Yes, sir.

MR. COBB: Yes, Your Honor.

THE COURT: Thank you.

That being the case, let me say that the Plea Agreement was brought to me prior to the defendant pleading guilty and I agreed with the Government and the defendant that the 120-month sentence is appropriate; and therefore that was incorporated in the Plea Agreement and we'll proceed accordingly.

Before I hear from the Government and the defendant, I would ask the clerk to make this Plea Agreement -- excuse

me -- this Presentence Report part of the record. And since there are no objections to it, I'll adopt the factual statements in the Presentence Report as the Court's finding of fact for the purposes of this hearing.

MR. COBB: Your Honor, can I interrupt just a second? Because Mr. Wright had asked for a suppression hearing and the suppression hearing was held and ruled against, the only objection that he has are to the offense code in paragraph 10, 11 and 12, but that was taken care of in the suppression hearing.

THE COURT: Thank you. Well, that's preserved for the record.

MR. COBB: Yes, sir.

THE COURT: And anything else that was not objected to I'll adopt. I've ruled on those. I'll adopt my rulings for the purposes of this hearing.

The Presentence Report will remain under seal unless it is needed for appellate purposes and the recommendation to the Court will remain under seal until further order of the Court.

Having so stated, does the Government have anything else to add before I listen to Mr. Cobb and the defendant?

MR. KITTRELL: Just that the Government would not object to any motion for variance from the Guidelines in order to achieve the sentence in the Plea Agreement, given

the fact that it appears the defendant's history category is overrepresented by the Guideline sentence.

THE COURT: Thank you very much.

Mr. Cobb, I'll be glad to hear from you, and if you would incorporate into your remarks the reasons you think I should agree to the variance, go ahead and add that, as well.

MR. COBB: Thank you, Your Honor.

If it please the Court? In court today with Armond are his grandparents, who are seated in the second row over there. They live in Georgetown and they, in essence, have pretty much raised him and are here on his behalf.

As Mr. Kittrell indicated, the predicate offenses that triggered the Career Offender status were possession of marijuana cases. And each of the two predicate offenses dealt with ounce amounts, not pounds, not kilos, not multiple kilos, not multiple pounds, and in any ordinary setting, probably should have or could have been dealt as possession cases and held as misdemeanors. Be that as it may, for whatever reason, his counsel had him plead to possession with intent to distribute. Those provide the predicate amounts.

Unfortunately, as Mr. Kittrell indicated, that sort of overstates what his risk is. The amount in controversy here in this case was, again, a little over 2 ounces, 6 and 7 grams. So there is no question that by the report you see that Mr. Wright has had a history of drug use. From a very

early age, he was involved with marijuana and with cocaine and with alcohol. So a good bit of the problems that he has had with the possession of drugs is the use of drugs, as well.

There was no indication in this case whether or not they had been watching him, whether or not he was dealing, whether they knew that he was dealing, there was no indication of that whatsoever. This was just an arbitrary traffic stop and that they found this stuff thereafter.

So because of that, and because of his age, we think that he is a prime candidate for a variance from the 262 to 327, and his previous counsel had negotiated with the Government two 60-month sentences that was placed into the Plea Agreement.

Your Honor, he has three children, sadly one of which was born since, has not seen the third child. But while he was out on bond prior to this arrest, he was working at a number of different jobs as a roofer and in construction and other jobs that he could get to help support -- he was under a court order to pay child support. He was doing that. He's concerned that he's in arrears and has been declared to be in arrears because of his incarceration status, but of course he has no way of dealing with that.

He's very much interested in continuing with drug counseling that he started when he was in the Charleston

County Detention Center and the Georgetown County Detention Center.

We would ask the Court to, in its judgment and commitment form, recommend that he be committed -- and again, this is a recommendation only, I know the BOP policy changes from time to time as to who is eligible to go into the RDAP program, but that he be admitted to go through the RDAP program and continue his drug and alcohol counseling.

We would also ask Your Honor that he be permitted to remain in South Carolina in one of the facilities that the Bureau of Prisons has in South Carolina, the closest of which would be Williamsburg, to his grandparents. His grandfather has a bad heart condition and is not able to travel very far. That would be helpful for purposes of visitation, but we understand that it's up to his classification status and space available. But we would ask that he be -- that you recommend that he be permitted to serve his sentence in South Carolina at an institution that has the RDAP program.

Your Honor, he has handed up through me to you a letter concerning his past, what he is doing now, and what he hopes to do in the future, but I think very succinctly says that he is remorseful for his actions, he's concerned about his drug use, he wants to get that behind him and he does want to get out and help support his family.

THE COURT: Let me say for the record that I have

read the letter Mr. Wright sent to me through Mr. Cobb, and I understand your arguments he puts forth and the clarity that he brings to the subject in that letter, so thank you.

Mr. Wright, anything else you would like to add?

THE DEFENDANT: Your Honor, um, just to reiterate some of the things that he was saying, that my lawyer was saying, that this -- this case stems from me being a drug user. And I know I have been one since an early age, as you stated. And I know that's what led to my problem and me being in the situation that I am today. And that from the time of this incident, I had been drug free and then I sought out help before and after being incarcerated. Not only that, I have been crime free since that time, also. I haven't had any other problems dealing with that or -- and that I would have been a hard working, productive member of society and a good and supportive father to my children.

And I'm just asking the Court for all leniency that the Court will allow in my favor because I want to get back out and I want to take care of my family and my responsibilities as I have been doing. And I just wanted the chance to continue that, sir. And I'm just asking for a chance to be given me to allow me to do that, sir. And I just -- I would appreciate any kind of leniency that Your Honor would be able to give me.

And I thank you for your time and allowing me to

speak.

THE COURT: Thank you. And I thank your grandparents for being here. I know it means a lot to you that they are here to support you. I want them to understand that it means a lot to me, as well, and I appreciate them being here.

You know, it's the saddest thing in the world to see somebody such as yourself, who is so well spoken and represents his point of view as well as you do, and for whom the light bulb didn't come on until much too late. It's disturbing and frustrating to me to see people go through the state system with repeated arrests and suspended sentences, and then all of a sudden they end up in Federal Court and they are facing massive amounts of time in prison. And at that point, it's like running into a brick wall. And I'm sure that's the way you felt when you saw the Guidelines in this case and your listing as a Career Offender.

I'm going to grant the motion for variance and I'm going to sentence you to the agreed-upon number of years because I think that your record or the Guidelines overstates your record. You had multiple offenses, as Mr. Cobb just pointed out, they need not have resulted in the categories that the Guidelines place you in.

Having said that, I would be remiss if I didn't tell you and warn you that while 10 years is more time than you

want to spend, it is a considerable less amount of time that the Guidelines call for. So the agreement of the U.S. Attorney brings you down to where your Guidelines should have been without the Career Offender status. But if you get in trouble again when you are released, you will spend the rest of your life in jail. I can't think of any other way to say it than the key is in your hand. You are too smart, you are too invested in your family to ever put yourself in that position. But if you don't lick that drug program, then you will spend the rest of your life in jail.

I'm going to ask the Bureau of Prisons to put you in the most intensive drug treatment program it has. Having read your letter, you are ready for that program, you want to take advantage of it, but not just in that program, but later when you are released. It will be a daily battle. It will be something you can never again give in to. Peer pressure, lack of funding, you name it, is no excuse for your getting back involved with drugs. And I'm comfortable by the time you leave prison you will have been clean for a long time, but once you slip back, it's so easy to go all the way down. So you need to think about that now and you need to think about it in the future every day. And if you do, then I think you will be available for your children, you will be available for the mother, and hopefully that you will be a productive, contributing citizen, and I think you can be.

MR. COBB: Your Honor, the only other thing we wanted to make sure is he got credit from the pretrial detention time. He has been in custody now for several years.

THE COURT: It's been a long time. This case has been continued for a number of reasons and the Presentence Report was completed way back in --

MR. COBB: 2009.

THE COURT: -- 2009. So I'll ask and direct that the time served would be credited and it will be.

MR. COBB: Thank you, Your Honor.

THE COURT: And I would ask that you place him in a facility in South Carolina closest to his home.

Having considered the Guidelines and also the sentencing factors and the agreement of the parties, it's the judgment of Court the defendant, Armond Rashawn Wright, is hereby committed to the custody of the Bureau of Prisons for a term of 120 months. Consisting of 60 months as to Counts 1 and 2, those to run concurrently, and 60 months as to Count 3, that term to run consecutive to the other term.

MR. COBB: Your Honor, he only pled guilty to Counts 1 and 3.

THE CLERK: 2 and 3.

MR. COBB: Excuse me, 2 and 3.

THE COURT: 2 and 3, I'm sorry.

MR. PARADIS: Your Honor, the Presentence Report was done as a consent, and I think the recommendation was done prior to his guilty plea and that's the reason that --

MR. COBB: He pled to an 841 and a 944.

THE COURT: Well, thank you. The sentence is amended to reflect 60 months as to the first count and 60 months consecutive as to Count 3.

MR. COBB: Thank you, Your Honor.

THE COURT: Thank you for correcting me.

A fine is waived.

There is a $300 special assessment fee, which is due beginning immediately.

Upon his release from imprisonment, he'll be placed on supervised release for a term of five years as to both counts to run concurrently.

Within 72 hours of his release from the custody of the Bureau of Prisons, the defendant will report in person to the Probation Office in the district to which he is released. And while on supervised release, he must comply with the mandatory and standard conditions of supervision as outlined in Title 18 of the U.S. Code, Section 3583(d), also the following special conditions:

The defendant shall participate in a program of testing and treatment for substance abuse as approved by the probation officer until such time as he's released from the

program by the probation officer.

He also shall enroll in and complete an educational program as directed by the probation officer with the objective of obtaining his GED, unless he's already obtained that during his period of incarceration.

Mr. Wright, I'm comfortable you will accomplish that while you are incarcerated and I would also encourage you to take advantage of any vocational training made available to you during that time, so when you get out, you will be able to secure good employment.

Unless otherwise gainfully employed, the defendant will complete a vocational training program while on supervised release with the objective of learning and obtaining lawful employment as directed and approved by the U.S. Probation Officer.

Does either the Government or the defendant have any objections to the form of the sentence?

MR. KITTRELL: No, sir. The Government would move to dismiss Count 1 of the Indictment pursuant to paragraph 4 of the Plea Agreement.

THE COURT: I grant that motion.

MR. COBB: Thank you, Your Honor.

THE COURT: Any objections, Mr. Cobb?

MR. COBB: No, Your Honor.

THE COURT: Mr. Wright, a defendant has a right to

appeal his sentence. If you wish to appeal this sentence, any Notice of Appeal must be filed within 10 days after the judgment is entered, and Mr. Cobb will tell you when that is. It will just be a matter of a couple days at most. And if you so request, the Clerk of Court will prepare and file a Notice of Appeal on your behalf. You understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Good luck to you, sir.

MR. COBB: The only other thing is his grandparents are here from Georgetown, could he have a few minutes with them downstairs?

THE COURT: I would ask the marshals to arrange that. Thank you very much.

MR. COBB: Thank you, Your Honor.

THE COURT: Thank y'all.

***** ***** *****

I certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

---------------------------

Amy C. Diaz, RPR, CRR October 24, 2013

2:04-cr-00618-PMD Date Filed 10/28/13 Entry Number 141 Page 15 of 15

15

S/ Amy Diaz

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER